## STEELE *vs.* WHIPPLE.

Where the holder of a note payable to himself, requested another person to procure the note to be discounted, who by placing his name upon it as an endorser procured it to be done, received the avails and paid over the same *except the sum of thirty dollars* which he retained for his endorsement and trouble in the matter; *it was held* that the transaction was *usurious*, and that the *usury* might be alleged in bar of a recovery of a subsequently substituted note.

This was an action of *assumpsit* tried at the Albany circuit in October, 1838, before the Hon. JOHN P. CUSHMAN, one of the circuit judges.

The plaintiff claimed to recover against the defendant as the endorser of a promissory note, dated 13th March, 1832, for $1000, made by one J. Jackson, which had been negotiated by S. Dutcher to the plaintiff. The defence set up to a recovery was, that the note for $1000 had been received by Dutcher, to enable him among other things to take up a note for $763, which it was alleged on the part of the defendant was *usurious*, and that the note for $1000 had been negotiated to the plaintiff, under such circumstances that the defence of usury was available against him. In proof of the usury, it was shown that Dutcher having lent $250 to Jackson, the latter brought to him the note for $763, drawn by one Holdridge, payable to Jackson, endorsed by him and a firm of livery stable keepers, and desired Dutcher to procure the same to be discounted. Dutcher took the note to a bank, and was there told if he would endorse it, it would be discounted ; he accordingly endorsed it and received the avails, which he applied by appropriating $250, to refund himself for the money lent Jackson, $30 for his endorsement and the trouble he had in the matter, and the residue he paid to Jackson. His own account of the affair is—" I took out $250 which belonged to me, then I took $30 for my trouble and for endorsing—I do not endorse for nothing." And again, " I told Jackson I charged $10 for going to Norton (the president of the bank) to get the note dis-

Steele v. Whipple.

counted, $10 for having used my name upon the note and $10 for the bother I had about the $250, and he took the balance contentedly." There was evidence given on the part of the defendant, for the purpose of showing that the note for $1000 had been diverted in its appropriation by Jackson from the purpose for which it was made, the defendant being a mere accommodation endorser, and that the plaintiff was not a *bona fide* holder. The judge submitted the questions of whether there was *usury* in the transaction, whether there had been a misappropriation of the note, and whether the plaintiff was a *bona fide* holder, to the jury, who found a verdict in favor of the plaintiff, for $1444 and 83 cents. The defendant asks for a new trial.

*J. McKown,* for the defendant.

*S. Stevens,* for the plaintiff.

*By the Court,* COWEN, J. The question whether the plaintiff was a *bona fide* holder, and whether the note in question had been used by Jackson for a purpose substantially different from what the defendant intended, when he endorsed, was, we think, properly left to the jury. But whether it was void for usury in the hands of Mr. Dutcher, we think, should not have been left to them. The short of Mr. Dutcher's account is, that he drew the money from the bank on the credit of his endorsement, retained $250 due him from Jackson, with $30 in the name of payment for traveling some rods to see Norton, and for endorsing and for trouble. I will only say that if this were not a usurious loan, it is very difficult to conceive what the law would esteem such, short of the party making a direct loan on express usury. If one man give his acceptance or note for another, on an agreement for a compensation, it has long been settled that this is usury *per se.* In one case an acceptance by persons not bankers, under an agreement for a commission of 2½ per cent, was held by Lord Ellenborough to be a transaction on which the jury were bound to find usury. *Kent* v. *Lowen,* 1 Camp. 177. He said it was a

Steele v. Whipple.

mere cloak for usury. *See Matthews q. t.* v. *Griffiths*, Peake N. P. C. 200 : and *Jones* v. *Davison*, Holt's N. P. Cas. 256. I have no hesitation in saying that a man can no more lend his endorsement for a compensation beyond 7 per cent. than his money. Though it is not cash itself, it is an equivalent. The borrower of the endorsement is bound to indemnify the endorser to the extent of the principal and interest which he shall be compelled to pay. All beyond is usury, so far at least as it is a mere compensation for a loan of credit. A bank does no more than lend its notes; yet it can take no more than 7 per cent. Shall it be entitled to more because it chooses to put its bills in the form of an endorse-ment ? The toleration of such a practice as that before us would be a repeal of the statute of usury. A man might always take what per cent. he pleased, if, instead of loan-ing his money, he loaned his credit. He has only to keep the money in his pocket, and give his acceptance, his note or his endorsement. It would have been the same thing had Mr. Ducher given his check, and charged $30 for the trouble of drawing it. To prevent evasion, our statute is express that no more than 7 per cent. shall be taken for the loan of money, &c. or a chose in action. 1 R. S. 760, § 2, 2d ed. 3 id. 611, note.

It is true, that a compensation for expense and trouble, e. g. some small and regular commission for bills drawn by one banker on another, has been allowed ; that is to say, it has been put to the jury to say whether it was a mere al-lowance for trouble in the regular course of mercantile bu-siness, and not for a loan of credit ; and verdicts finding that it was so, have been sustained, though the evidence tended strongly to prove usury. *Hammett* v. *Yea*, 1 Bos. & Pull. 144. " Surely," said Eyre, Ch. J., " there is a great difference between transactions with bankers and the ordi-nary transactions between man and man." He said the transaction was equivalent, first, to a discount of the bills ; and, second, the bills being drawn on London, it was equi-valent to a separate agreement to remit the money so ad-vanced on discount, to London. He added, bankers had a credit in London which was maintained at no small expense.

And to this principle all the cases are narrowed. *Carstairs* v. *Stein*, 4 Maule & Selw. 192. *Masterman* v. *Cowrie*, 3 Camp. 488. It may apply equally to bill brokers. *Ex parte Henson*, 1 Madd. R. 112. *Ex parte Goss*, 2 Deac. & Chit. 240. But it is confined to these, or at most extends to others acting in the regular course of trade. The reason of its being allowed in those cases, may be collected from the books I have cited. This is going quite far enough. *Bona fide* expense and trouble actually incurred, it is said in one case, may be paid on a loan beside interest, though the lender be not engaged in trade. *Ex parte Gwyn*, 2 Deac. & Chit. 12. But if this be so, none is actually shown in the case at bar. The money was procured by the endorser, and withholden till the borrower came to his terms.

Counsel are certainly right, when they say here was no usury in Mr. Norton or the bank. Had the original note, rested there, or in the hands of a *bona fide* transferee of the bank, and either had brought an action on the original note, or a substituted one, such action would lie. *Barretto* v. *Snowden*, 5 Wendell, 181, was that case. So was *Coster* v. *Dilworth*, 8 Cowen, 299, and *Dagnall* v. *Wigley*, 11 East, 43. The reason of all these cases was, that the agent was the usurer, and not the man who advanced the money and took the note. When the agent holds the note and sues, the case is a very different one. Here the agent Mr. Dutcher, gets the money, hands it over, receiving the $30, and afterwards takes the note. The whole $30 was charged for merely lending his name. I do not deny that he might have charged for actual labor, e. g. the ordinary price for drawing a mortgage or bond, as a counter security, or the like. So, had he actually journeyed in procuring the money, and thus incurred expenses, perhaps *Ex parte Gwyn* would allow a reimbursement, if we are to follow that case. But I deny that the case at bar can be put in any other light than a loan of credit, in lieu of money. To allow this, would, so far from discouraging, be to offer a premium for usury. It would place usurious dealing on the most easy terms. A man may keep his cash to lend out at his leisure, and draw interest on his name. His latitudinary charges for the use

Steele v. Whipple.

of the latter would be clear gain; and an endorser of high credit might make very great profits.

It was as an indemnity or security for such a transaction that the note in question was received by Mr. Dutcher. Its avails were made to cover the money before advanced with the usurious charges, and a further advance of $200, &c. For these purposes, Mr Dutcher received and considered the note as his own. The substituted note was, of course, equally usurious in his hands with the original transaction; and so the jury should have been told. *Reed* v. *Smith*, 9 Cowen, 647.

The learned judge charged, that "If they found from the evidence that the note in Dutcher's hands was usurious," the further inquiry remained as to the plaintiff's being a bona fide holder, &c. Whereas, we think the minds of the jury should have been disembarrassed of the first question, by being told that the note was clearly usurious in Dutcher's hands. There can be no doubt that he was fully aware of the consequences to himself, had he continued to hold this note in his original capacity, and sued it in his own name; and the single question for the jury was, whether the circumstances under which it was transferred to the plaintiff, conferred on him a paramount right under the law as it stood at the time of the transfer. As the case is presented to us, we cannot see whether the jury have found that there was no usury, or that the plaintiff was a *bona fide* holder, or both; and for the purpose of removing the difficulty, we think there must be a new trial; the costs to abide the event.