Nelson, Cb. J.
Our statute against usury, (1 R. S. 760, 2d ed.) provides, that the rate of interest upon the loan or forbearance of any money, goods or things in action, shall continue to be seven dollars upon the hundred; (§ 1;) that no person or corporation shall, directly or indirectly,’take or-receive in money, goods or things in action, or in' any other way, any greater sum . or greater value, for the loan or forbearance &c.; (§ 2 ;) and that.all bonds, bills, notes &c., and all other contracts or securities whatsoever &c., whereby there shall be reserved or taken, or secured or agreed to be reserved-or taken, any greater sum or greater value for the loan See. than as before prescribed, shall be void. 5.)
It has been repeatedly decided under this act, which is taken, substantially, from the statute .of Anne, that, in order to make a transaction usurious, there must be a loan of u money, • goods or things in action,” (to use the words of our statute,) and an agreement to take more than legal interest for the forbearance ; or some device contrived for the purpose of evading- or concealing the appearance of a loan, when in truth it was such. The authorities are full to this effect. (Loyd v. Wil - *228 liams, 3 Wils. 261; Barclay v. Walmsley, 4 East, 55 ; Lloyd v. Scott, 4 Peters, 205 ; Chitty on Bills, 100, Am. ed. of 1839 ; Comyn on Usury, 156 ; Ord on Usury, 24.) ' It is not usury, therefore, for an acceptor to discount for a premium his own acceptance due at a future day, for this is not a loan, but an anticipation of payment; (Barclay v. Walmsley, 4 East, 55 ;) nor is the bona fide sale of a bill for a less sum than the amount payable upon its face, usurious. (Ex parte Lee, 1 P. Williams, 782 ; King v. Ridge, 4 Price, 50; Stoveld v. Eade, 4 Bing. 81; Cram v. Hendricks, 7 Wend. 569.) And a contract, made at the time of sale, to pay more than legal interest on the purchase money of an estate 6ona^de sold, has been decided not to be usurious. (Beete v. Bidgood, 7 Barn. & Cress. 453 ; 1 Man. & Ryl 143, S. C. ; Doe v. Brown, Holt’s N. P. C. 295.) So, of a sale of goods at three months credit, with a stipulation that, in case the money be not paid, the vendee shall allow a half penny an ounce per month till the debt is discharged ; provided the transaction be a bona fidSe sale. (Floyer v. Edwards, Cowp. 112.) In all these cases, however, if the transaction be a mere device to cover and conceal a loan at unlawful interest, it then comes within the statute. But whether there was such a device—a corrupt intention to evade the law—is a question of fact for. the jury to determine upon a consideration of all the surrounding circumstances. (Hammett v. Yea, 1 Bos. & Pull. 153 ; Hutchinson v. Piper, 4 Taunt. 810 ; Lee v. Cass, 1 id. 511; Masterman v. Cowrie, 3 Campb. 488; Com. on Usury, 123 to 138, and the cases there cited.) ■ Applying this test to the present case, I am unable to see how we can declare,- as matter of law, after the finding of the referee, that the transaction is within the statute. We see there was no loan between the parties; and that, so far as respects the plaintiff’s connection with the first notes, he merely sold the guaranty of his firm. There was no application for a loan ; and the referee, has expressly found that none was directly or indirectly made. In short, the dealing between the parties Was in fact just what *229 it purports to have been, viz. a stipulated compensation for the guaranty of the plaintiff’s firm.
The case is therefore narrowed down to the question whether a bona fide sale of one’s credit or security for the use and benefit of another, unconnected with a loan, is, per se, usurious.
Assuming, as' we must, that there was no loan, the transaction does not fall within those decisions which have now firmly established that bankers and merchants may, in addition to lawful interest on the discount of bills and notes, take a reasonable commission by way of compensation for trouble and expense 3 provided such commission be not intended as a device to cover a usurious loan. (Auriol v. Thomas, 2 T. R. 52, and Winch v. Fenn, in note 3 Hammett v. Yea, 1 Bos. & Pull. 144 ; Brooke v. Middleton, 1 Campb. 445 ; Masterman v. Cowrie, 3 id. 488 ; Baynes v. Fry, 15 Ves. 120 ; Carstairs v. Stein, 4 Maule & Selw. 192 ; Chit. on Bills, 100 to 105, Am. ed. of 1839.) The cases upon this subject may therefore be laid out of view, as having no direct application to the question before us.
The case of Kent v. Lowen, (1 Campb. 177,) is a direct authority in favor of the defendants. Lord Ellenborough there held a bill of exchange void for usury, on the ground that the accommodation acceptor, through whom the plaintiff claimed title, had charged a commission over and above lawful interest. He said, country bankers had been allowed to take, besides legal interest, a certain commission for trouble and expense 3 but that was in discounting, not for accepting bills. This case. was, in effect, overruled by the same learned -judge five years .afterwards, in Masterman v. Cowrie, (3 Campb. 488,) where he held, that an agreement by a London banker to accept and pay bills of exchange drawn in the country for a certain commission, he to be furnished with funds to pay the bills before they became due, could not be usurious, there being no contemplation of an advance of money 3 and that if an advance had been contemplated, it would have presented a question of *230 fact, whether the commission was a shift to obtain more than legal interest for the forbearance, or a compensation for trouble and expense incurred in accepting and paying the bills. There is another feature in Masterman v. Cowrie, which is applicable to the case before us. After the parties had dealt together for some time, the plaintiff expressed himself dissatisfied with the manner in which the bills were drawn, and requested that they should be drawn for the future by some respectable person in the country. It was then agreed that, if the plaintiff would procure such a person, he should be allowed one shilling per cent, for his trouble in drawing the bills. M., a country banker, assented to the proposition, drew the future bills, and received the commission. Lord Ellenborough said • ££ The only question arising out of the one shilling allowed to the drawer is, whether that was a color for usury. If it was ■ íonajide applied to M.’s use, it cannot be usurious.”
In Lee v. Cass, (1 Taunt. 511,) there was a loan of money, and the lender made it a condition that he should receive, in addition to lawful interest, three and a half per cent, for guarantying the payment of the bill by the acceptors. There was no doubt, upon the evidence, as to the solvency of the acceptors ; and the jury found, that the charge was a device to get more than legal interest. The counsel in that case conceded, however, if I understand them aright, that had there been no loan, and the transaction a Iona fide guaranty, it would not have been chargeable with usury. Indeed, Mr. Chitty lays down the following proposition as derivable from that case : @ So a charge for guaranteeing the payment of bills when unconnected with any loan, by the party making it, is not usurious ;” (Chitty on Bills, 101, Am. ed. of 1839 ; see also Chitty, Jr. 100, m. ;) and a similar principle is asserted by Eyre, Ch. J. in Hammett v. Yea, (1 Bos. & Pull. 153.)
In Stoveld v. Eade, (4 Bing. 81,) one Upton having a bill of JE2500, payable in two months, which he could not readily negotiate in London, requested the plaintiff to give him in exchange a bill on his London banker payable at the same time, *231 which he did, deducting 16Z. 10s. for trouble &c. This was held by the whole court not to be usury. Best, Ch. J., after stating the case, observed : “ The plaintiff consents to accommodate him, [Upton,] but demands something for the trouble and risk. If he had required more than 5 per cent., it might have been thought that the exchange was only colorable, and that the real design was to exact usurious interest; but as less than 5 per cent, was taken, and the transaction was evidently for the accommodation of-Upton, there is no pretence for calling it a loan, or for contending that it falls within the provisions of the statutes against usury.”
In Carstairs v. Stein, (4 Maule & Selw. 192,) it was held, that an agreement for a commission of one half per cent, for accepting and negotiating bills, is not, per se, usurious ■ but that it presents a question for the jury, depending upon whether the commission may be ascribed to a reasonable remuneration for trouble and expense, or whether it be a mere color for the payment of interest above 5 per cent, upon a loan of money. The court said : “ All commissions, where a loan of money exists, must be ascribed to and considered as an excess beyond legal interest, unless as far as it is ascribable to trouble and expense bona fide incurred &c.; but whether any thing, and how much, is justly ascribable to this latter account, is always a question for the jury, who must, upon a view of all the facts, exercise a sound judgment thereupon.”
The case of Dunham v. Dey, (13 John. R. 40,) in this court, is in perfect harmony with the current of English authority. There, the plaintiff exchanged notes with M. & W. Ward, to the amount of $9000, for which he charged two and a half per cent. The Wards were indebted to the plaintiff at the time in the sum of $4000, and, being pressed for payment, made application for the exchange. The judge charged the jury that, if they believed the transaction to have been for the purpose of raising money at a greater rate of interest than seven per cent., such intention made it intrinsically a loan, and the transaction was usurious and void. The jury found for the de *232 fendant. Spencer, J. in delivering the opinion of the court, referred with approbation to the case of Floyer v. Edwards, (Cowp. 112,) quoting the language of Lord Mansfield, who, he said, had laid down the rule with much perspicuity arid force, thus : u it (the question) depends, principally, on the contract being a loan ; and the statute uses the words 1 directly or indirectly f therefore, in all questions, in whatever respect repugnant to the statute, we must get at the nature and substance of the transaction ; the view of the parties must be ascertained, to satisfy the court that there is a loan and borrowing, and that the substance was to borrow on the one part., and to lend on the other; and where the real truth is a loan of money, the wit of man cannot find a shift' to take it out of the statute.” Spencer, J. then added, that if the evidence before the jury exhibited a case of borrowing on the one part and lending on the other, at a greater rate of interest than seven per cerit., and this entered into the concoction of the bargain, the transaction was undoubtedly usurious and the notes contaminated by it and void. The learned judge also referred to the usage among endorsers of bills of exchange, and sureties on custom house bonds, to take a per centage for advancing their responsibilities, observing: “ I see nothing improper in this ; there is no loan' of money, directly or indirectly, in either of these cases; they come neither within the terms or mischiefs of the statute, and they are innocent transactions.” The case was afterwards taken to the court for the correction of errors, (16 John. R. 367,) where the judgment of the supreme court was affirmed. Chancellor Kent said, that the commission received by the plaintiff exceeded the legal rate of interest upon four notes of the plaintiff, supposing them to have been intended as a loan of so much^ cash • and the question was, whether the commission was not another name for interest taken on a loan of credit, instead of a loan of cash; that the jury had found the exchange of the notes was for the purpose of raising money at a greater rate of interest than seven per cent, ; that this fact established, beyond all contradiction, the charge of usury; and that, if such *233 was the object of the parties, (and the jury had so found it,) then it was a shift or contrivance to get rid of the statute of usury.
In a case between the same parties, (2 John. Ch. R. 182,) arising out of the same course of dealing, where Dunham had taken by way of commission, upon an exchange of notes, a sum less than the rate of lawful interest, Chancellor Kent treated it as a loan of his redit or security to the Wards. 66 They were enabled,” he said, “ to raise money by discount on the notes of the defendant, (Dunham,) as being of better credit in the market than their own; and if the defendant had not taken any commission for the transaction, he would have had nothing for his risk and trouble. If he had taken more than at the rate of seven per cent, for the amount of his notes for the time they had to run, it would probably have been usury in disguise.” This view, it will be seen, agrees with that taken by the court in Stoveld v. Eade, (4 Ring. 81,) before referred to. The two cases differ in this : In Stoveld v. Eade there was no ground for supposing that a loan was intended ; whereas, in the case before the chancellor, there were many circumstances tending to that conclusion. Best, Ch. J. observed, in Stoveld v. Eade, that if the plaintiff had required more than 0 per cent., it might have been thought the exchange was only colorable, and that the real design was to exact usurious interest j” and then, according to the settled course of decision in England, the court would have been bound to put the question to the jury. The case before Chancellor Kent being in equi ty, it was within the province of the court itself to determine whether the transaction was a device to get more than legal interest; and the chancellor intimates that, if more had been taken, under the circumstances of that case he should have found it “ usury in disguise.” He did so find in Fanning v. Dunham, (5 John. Ch. R. 122,) where more than legal interest was exacted under the cover of a charge for commission. The decision was put upon the ground that the transaction was in effect a loan, and so intended, and the whole a contrivance to *234 get over seven per cent. (See also Nourse v. Prime, 7 John. Ch. R. 78, 79.)
From this review of the cases in our own and the English counts, we may, I think, safely conclude^ 1. That a guaranty of paper, unconnected with a loan, and really and honafide intended to be what it purports on its face, viz. a security for payment—whatever other objections may be made to the transaction—is not obnoxious to the imputation of usury, even if a commission of more than legal interest be agreed upon and taken for the same; 2. That if connected and mixed up with a loan, and a commission exceeding the legal rate of interest be taken, it will be considered an excess of interest, and, therefore, the transaction usurious and void, unless the excess appear to "have been intended as a compensation for trouble and expense honafide incurred in the business, which, in England, is usually one quarter per cent.; and 3. That whether the transaction was intended as a device and contrivance for the purpose of disguising a loan and enabling the guarantor to exact interest exceeding seven per cent., is a question of fact to be determined by the jury upon a consideration of all the circumstances.
The case of Steele v. Whipple, (21 Wend. 103,) was cited on. the argument, and principally relied on by the counsel for the defendants. The course of reasoning of the learned justice who delivered the opinion in that case, undoubtedly goes far to sustain the defence here. I think the case was rightly decided, and that it was put on its true ground in the directions given in awarding the new trial; which were, that the jury should be told the note of Jackson was usurious in the hands of Butcher. From the time I first heard the case, I never doubted that Butcher was, in truth, the lender of the money, This was the irresistible conclusion from the facts. He, in fact, took the note and advanced the money, but attempted to prove that he had procured the money by negotiating the note, and for that reason had taken the exorbitant premium ; all which, in my judgment, was negatived on the face of the transaction. I do not deny that the case stands near the line *235 which divides two well settled classes of cases ; one adjudging a transaction to be usurious per se, and the other, that it is not, but so fraught with suspicion of usury in disguise and in intent, that a jury may find it. The case itself, however, does not necessarily affirm any principle at variance with the doctrine of the one in hand.
It is said, if a per centage exceeding legal interest be allowed in the case of a guaranty, a ready way is opened to evade the statute. But this may also be said in respect .to dealings in any other commodity—e. g. in goods, stocks, annuities, notes, bills &c—yet no. one would think of declaring every sale of this description of property or credit to be within the act, for fear, it might be the cover of a usurious loan. Nor was the statute made or expected to remedy every species of exaction. An extravagant charge for a guaranty, purely as such, is no more usury within the sense and meaning of the law, than, if exacted or given for any article of commerce. The price of a note, bill or bond, bought- in the market, is but so much given for the credit of a name ; and this is an every day transaction. Neither are the chances all on one side ; as was exemplified in the case of Oakley v. Boorman, (21 Wend. 588.) There, on receiving a premium of $190, Oakley guarantied by-endorsement, notes to an amount exceeding $7000, which had about six months to run, and, in a few weeks afterwards, the maker failed. Oakley sought to reduce his-liability down to the $190, but was charged with the whole demand. Mr. Justice Cowen, who delivered the opinion, likens the case of a gua antor to that of an insurer—which, no doubt, in principle, it very much resembles—‘and observes that, u no matter how great the risk taken, nor how small the premium ; or on the other side, how enormous the premium or slight the hazard, if the contract be fair.” “ It is not,” he says, u for us to hamper Mr. Oakley or any other citizen, in such a way as to preclude his making money by insuring the debts of his neighbors. It is enough that he has not been imposed upon.” He further remarked : “ There is no distinction, in principle, between an *236 endorsement to secure future advances, and an endorsement te sécure a precedent debt.” I agree to all this, and will merely say that, as Oakley would, on taking up the note, have had his remedy over against the maker, if he had not failed $ so here, the plaintiff is entitled to the like remedy, having been obliged to advance his money, and take up the note'he had guarantied. I do not think a case to the contrary can be found in the English books, except Kent v. Lowen, decided by Ld; Ellen-borough at nisi prius in 1808. That case is doubted by’Mr. Chitty, (Chitty on Bills, 103, note (a), Am. ed. of ’39,) confined by Mr. Comyn to a mere acceptance, (Comyn on Usury, 134,) and has been disregarded by Ld. Ellenborough himself. I think it stands opposed to the whole current of English and American authority.
I am of opinion, therefore, that the motion to set aside the teport of the referee should be denied.
Bronson, J.
It cannot, I think, be denied that ohr usury statutes have been greatly shaken by the decision of the court for the correction of errors in Rapelye v. Anderson, made in December last, (a) And although that case was not like the one now before us in its circumstances, it was, at thve least, as plain a case of usury as this is; and on that ground I concur in the opinion that the report of the referee should not be disturbed.
Cowen, J;
The notary’s certificates say, Without qualification, that the notices were served by putting the same into the post office. The 2 R. S. 212, 2d ed., § 46, simply requires a certificate of the service of notice-. It is a sufficient compliance to say positively that the service was made, specifying the mode. Such language imports that the notary made the service himself, dr knew that it was made. He need not state by whom the business was done.
*237 The same statute requires, it is true, that the certificate should also specify the party’s reputed place of residence, and the post office nearest to it; and the certificates in question do not in this respect accord with the requisition. But the provision is modified by the statute of April 23d, 1835. (Sess. L. of ’35, 152.) The latter act declares, that it shall be sufficient if the notice (when by mail) be directed to the city or town where the person sought to be charged resided at the time of endorsing, &c. unless at the time of affixing his signature, &c. he shall, in addition thereto, specify on th e note &c. the post office to which he may require the notice to be addressed. No specification of any post office was added by either of these endorsers. Their place of residence at the time was added ; and it appears by evidence aliunde. The certificate may of course be altered in its language, so as to follow the new provision. Here, the certificates state that the notices were directed to Auburn ; in one branch adding, “ according to directions on note.” The certificates, taken in connection with the endorsements and the fact of residence as proved, are, I think, sufficient to satisfy the provisions of the amendatory act.
A more material question, however, is, whether the claim of the plaintiff can be sustained on the merits. The notes in question were discounted by the plaintiff’s firm with a view to take up the two notes of the same amount which he had endorsed for his firm, then lying in the bank, and being about to mature. These two notes were taken up by the avails of the discount; thus virtually bringing the notes in question into the place of the others as renewal notes. They seem to have been considered by all parties as a substitute for or continuation of the two notes which the plaintiff endorsed for the premium ; and were so considered by the referee. Being thus connected, their validity depends upon the same question as would that of the first two notes, had they been discounted by the plaintiff, or come into his hands by the act of taking them back from the bank as an endorser. That was accordingly the question upon which the referee passed.
*238 The original notes were made for the purpose of raising money at the banks in New-York, This the plaintiff understood. Burr retained him to endorse in order to give the notes currency at the bank; and one of them was discounted at the Union Bank, of which it seems the plaintiff was a director. For endorsing he charged a premium of two’and a half or three per cent.; and by whatever name the transaction may be characterized, it had all the effect upon Muir, the debtor, of very oppressive usury. The loan was clogged by way of premium and discount with a charge at the rate of fourteen and a half to sixteen per cent, per annum, according as the premium for endorsing was two and a half or three per cent.
Had the plaintiff himself discounted the notes at that rate, all the cases concur that they would have been void in his hands for usury. (Com. on Usury, 122 ; Lowes v. Mazzaredo, 1 Stark. Rep. 385 ; Ackland v. Pierce, 2 Camp. 599.) Does it make any difference that he comes in to effect the same thing indirectly 1 that he endorses the original notes, and discounts the renewal 1 In either form he received interest for his money at the same rate as the defendant paid it. He first receives at the rate of seven and a half or nine per cent, per annum, without parting with a cent of his money. He loans it to another during the four months the first notes had to run ; and in the end, whether he is put to pay the original notes or not, his $3000 are at more than double the lawful interest. He takes more for his endorsement than the bank could for the actual discount; and, in the meantime, lends his money to or discounts for another at two and a third per cent., calls back the actual loan at the end of the four months, and redeems his endorsement at the bank by paying the principal. I speak of him as a lender, who wfill not let his $3000 lie idle. The transaction scarcely varies in form from an original discount at the double interest. By endorsing, he puts himself in the position of a holder. At the end of the four months he takes the notes in his original capacity. He is', in the language of the cases, remitted to his rights, and may sue all the parties as if he *239 had never parted with the note • first striking out his own name. (Cowley v. Dunlop, 7 T. R. 561, 566 ; Death v. Serwonters, Lutw. 885 ; Bosanquet v. Dudman, 1 Stark. Rep. 2, 3 ; Houle v. Baxter, 3 East, 177.) But the law looks to the substance and effect of the transaction. If, through the agency and with the privity of the lender, the borrower be oppressed with a double per centage, and the lender gain in the same proportion, this is usury, in whatever form the transaction may be disguised. Even a direct discount is not a formal loan; but a purchase of paper. In substance it is a loan, and so is any transaction which results in the same thing.
But it is said, the plaintiff was a broker and privileged to take a reward for his services in that character. Suppose him, for the present, to have acted in the capacity Of a money broker : The statute of usury (1 R. S. 705, § 1,2d ed.) forbids.his taking directly or indirectly more than one half per cent, for soliciting, driving or procuring the loan or forbearance of $100 for one year, and in that proportion. Here he charges two and a half or three per cent, for procuring a loan at four months. (See Pryce v. Wilkinson, 10 Moore, 177.) A broker who advances money for his principal, is no more entitled to charge him extra interest than any other man. If he act as broker in a business distinct from the procuring of loans—for instance, if he be a stock broker, and, in the execution of his trust, advance money for his principal—this does not preclude him from charging a commission for his services. But the compensation is, in such cases, allowed for his actual services. He is no more allowed to. overgo seven per cent, in his charge for advances than any other man. No one is allowed to take more than that for the loan or forbearance of money. The case of Nourse v. Prime, Ward & Sands, (7 John. Ch. Rep. 69, 77,) will illustrate the exception in favor of all brokers, save those engaged in procuring loans of money. The defendants took a note for their advances with simple interest, including also a distinct charge of a half per cent, for their services in negotiating stock transactions. This being a fair charge, Chancellor Kent held that *240 the note was not void for usury. The allowance is made on the same principle upon which factors are permitted to charge a-commission for their services in the general execution of their trust, which may be increased by reason of the undefined responsibility and labor of collection resulting from a del credere commission. (MCulloch's Dict. of Com. tit. Factor ; id. tit. Brokers ; Story on Agency, 337, § 328; Paley on Agency, by Lloyd, 40, 41, 100, 101.) By the latter, he engages to sell the goods and warrant the solvency of the vendee. (Chitty’s Beawes, 47 ; Mackenzie v. Scott, 6 Bro. P. C. 287, Toml. ed.; (Grove v. Dubois, 1 T. R. 115.) In other words, on the retainer of the creditor—not the debtor—he takes the office of a salesman, guarantor and collector of the debts. A creditor may, no doubt, pay or contract to pay his agent what the latter pleases to charge for the responsibility and trouble of collecting. The whole comes down to this principle. Where a bill broker at Nottingham took a bill on ondon in payment of a precedent debt, the collection of which, at London, would cost him, in the ordinary course of his business, 5s., and his other charges by way of postage, &c. would be 5s. more, an agreement to pay 10s.. at the time of discount was held not usurious, because it was a reasonable compensation for disbursements in collection. (Ex parte Henson, 1 Mad. 112.) It is pretty plain from the case, however, that the vice chancellor would have held even this transaction usurious, if there had been a loan. In more familiar terms, one owes an attorney in the country one thousand dollars; he brings him a bill ora New-York as payment, saying, collect it and charge a commission of five per cent, over and above your regular compensation. The attorney does so. That is not usury, because it can obviously be nothing but compensation; and a man may always pay his collector what premium he pleases. To this principle all the cases which allow to the lender more than seven per cent, on a loan, will be found to conform. They are the most common in respect to banks, which are indulged in taking a small commission for remittances. Yet this must *241 be clearly for services, or it will be usury. (See Baynes v. Fry, 15 Vesey, 120; McKesson & Co. v. McDowell, 4 Dev. & Bat. 120 ; Williams v. Hance, 7 Paige, 581; Campbell v. Shields, 6 Leigh, 517.)
In the case at bar, however, the plaintiff departed from the character of broker. Burr was the broker, or driver of the bargain, and received commission as such over and above what was paid to the plaintiff. He does not mention the amount. It is presumed that this did not exceed the half per cent, per annum allowed by the statute. If more, he was himself guilty of usury. Any assistance in procuring a loan, is the driving of a bargain within the statute of brokers. This was expressly held in Pryce v. Wilkinson, before cited.
Thus has the statute fenced the borrower against the gripe of the lender, and against that of the broker. But it is insisted there is yet an intermediate character to which the statute does not extend. This is the guarantor for the borrower, or the seller of his endorsement. I have already noticed the practical effect of such a distinction both upon the lender and borrower; and will, for the present, only ask, of what use to the necessitous man are statutory provisions in his favor, if the distinction be allowed 1 Clearly no more than a change in the person of his oppressor. He can get money at seven per cent of one, if he will pay an undefined premium to another for a loan of the credit on which it is to be obtained. According to the homely adage, he is enabled to “jump out of the frying pan into the fire.”
The plaintiff claims that- he sold his guaranty; and I suppose desires to be considered as on a footing with a factor and commission merchant del credere. I have already noticed the principle on which commission is allowed to the factor. It is enough to repeat, that the plaintiff was not, in the transaction before us,-either a factor or broker. On the contrary, regarding him for the present as a guarantor, he became such at the instance of the borrower in order to obtain the loan from the bank. I know it has been* laid down that “ a charge for *242 guarantying the payment of bills when unconnected with a loan by the party making it, is not usurious.” (Chit, on Bills, 101, ed. of 1839.) On looking at the case (Lee v. Cass, 1 Taunt. 511) cited by Chitty, the proposition to this unqualified extent will be found not sustainable by it. On the contrary, in Lee v. Cass, the guaranty being for the benefit of the-borrower, the premium paid by him for securing his paper by the guaranty was expressly declared to be usurious; and an action of debt grounded on the statute was maintained. It is true, as we have seen, that a creditor may give a premium for a guaranty or insurance of his debt. (Ex parte Adney, Cowp. 460 ; Oakley v. Boorman, 21 Wend. 588 ; Per Holt, C. J. in Bartlett v. Vinor, Carth. 251, 252.) No one would deny that he may get his debt insured as well as his house. But no case was cited on the argument, and I am aware of none, holding that a debtor may hire another to procure forbearance by a guaranty, at a premium beyond seven per cent, per annum, if at any premium. If the guarantor will take the place of the debtor for that, very well. It makes no difference whether he buy the debt, or become surety and take it by eventual subrogation. ' Nor does it differ the debtor that he is paying seven per cent, to one or the other ; and he pays no more to the guarantor if he absolutely assume the debt. Otherwise, if a man lend his collateral security at a premium from the debtor, leaving him still to pay the principal and interest. In either case, what does the guarantor advance for the delay 1 The original debt and interest. What is the consequence 1 Either conventionally or by legal effect, the debt becomes due to the guarantor, with the interest. He thus becomes a creditor in consequence of the forbearance, not only for all the money which he eventually advances, with the interest, but also for whatever premium he may have wrung from the necessities of the debtor on account of the delay he has procured for him. The only difference is, that instead of advancing the money in the first instance, and paying or buying the debt out and out for the premium, he, at a future day, brings himself into the *243 same case. The doctrine contended for is, that a man may demand any amount of premium from' his neighbor for securing his debt. Take the case at bar, of a premium at the rate of seven and a half or nine per cent, per annum, leaving the debtor to pay interest for delay on the original debt. The-principle would extend it to twenty per cent., because, it is said, here is no loan of money. I answer, it results in an advance of money. The negotiation is with a view* to such advance ultimately. If there be no advance, so much the worse. The surety has got the premium for the mere risk that by chance he might have been obliged to advance. He gets it for a fictitious or potential loan of money, instead of ah actual one, and in the mean time he has lent out his real funds to others. Sanction this, and the statutes become laws for the encouragement of usury. I am aware a learned judge once said, he could see no objection to an accommodation endorser of a bill of exchange taking a premium for his responsibility. (13 John. 47.) He was answering an argument that such was the usage. Under what qualifications he intended the remark should be taken, it is impossible to say. That a party cannot take a premium for becoming surety as an acceptor or maker, he himself held in the very case he then had under discussion, and he did not point out the reason why an endorsement formed an exception. That it is made with a view to procure and advance money for the principal, ultimately if not immediately, there can be no doubt; nor that the premium is taken for such advance. He remarked, there is no loan of money directly or indirectly. I have endeavored to show that, in such a transaction, there is an indirect loan ; and shall, in another connection, show that it has again and again been considered such upon authority. When the question in Dunham v. Dey, wherein the concession mentioned was made, came to the court of errors, Mr. Emmet insisted that the concession, if law, would overthrow the judgment of the court in that very case. (Dunham v. Gould, 16 John. 370.) It was not repeated in the latter case; nor was it pretended on the argument of the *244 case now before us that the dictum has the sanction of any adjudged case, or has ever been repeated elsewhere. I shall have occasion to show that it has been virtually disregarded in the entire course of the authorities, so far as they have noticed the question. It seems to be agreed, that the surety can in no case be entitled to receive any thing that he pays beyond the principal and legal interest. Sven if he become bound and pay usurious interest for his principal, instead of receiving it himself, and he know of the usury, he cannot recover on an indemnity bond given by the principal. (Ord on Usury, 100; 101; Com. on Usury, 196 to 198; Ford v. Keith, 1 Mass. Rep. 139; see also Bryant v. Christie, 1 Stark. N. P. Cas. 329.) Potkin’s case, (3 Leon. 63,) seems never to have been overruled. It would surely be a wide departure should we allow the surety to pay for a premium and recover the usury money for himself. The commission of two and a half per cent, agreed to in Colton v. Dunham, (2 Paige, 267,) was for becoming a guarantor of moneys borrowed upon respondentia, which may be at more than seven per cent. (See Peters v. Warren Ins. Co., 1 Story’s Rep. 463,472.) Beside, the legality of the transaction was not passed upon. Considering the plaintiff, therefore, as a guarantor, absolute or collateral, will furnish no protection against the imputation of usury.
It is further said, that the plaintiff himself did not loan money; and so there cannot be usury. It is not denied that the present statute of usury, (1 R. S. 760, 2d ed.) is equally comprehensive with the former. It applies, therefore, to a loan of money not only, but of every thing that is of money’s worth. This was said in so many words by Bayley, J. in Parker v. Ramsbottom, (5 Dowl. & Ryl. 151; 3 Barn, & Cress. 257, 270, S. C.) The plaintiff would hardly be willing to admit that the name of his firm on which the premium was advanced was not money’s worth ; and it is entirely settled, that where a man puts his name to negotiable paper for the purpose of money being raised upon it, there is a loan within the meaning *245 of the statute of usury. (See Reynolds v. Doyle, 1 Mann. & Grang. 753.) In Kent v. Lowen, (1 Camp. 177,) the defendant offered proof to show that Coates & Co. proposed to accommodate the defendant with their acceptance at three months, upon receiving his note for the same sum at ninety days, together with two and a half per cent, commission. Lord Ellen-borough told the jury there was no color for the commission; and that if they believed the evidence made out the case proposed, they were bound to find for the defendant, which they did. This case was recognized as laying down the law correctly in Bunham v. Dey, (13 John. 40.) In the latter case, the parties had exchanged notes to an equal amount, the plaintiff charging and receiving a commission of two and a half per cent. Yates, J. told the jury, that if they believed this was for the purpose of raising money at a greater rate of interest than seven per cent, per annum, which they were warranted to infer, such intention made it intrinsically a loan, and the transaction was usurious and void. On a motion for a new trial, Spencer J. asked, “ What is the difference between a man’s lending his notes to raise money upon, taking more than legal interest, and lending his money 1 I confess I perceive no other difference than this : that the borrower of the notes must probably pay more usury, to get them converted into cash. But the transaction is substantially a lending of money ; and I agree with the defendant’s counsel, that if this device be tolerated, the statute is judicially repealed.” The question in that case came before the court of errors, (Dunham v. Gould, 16 John. 374,) where Kent, chancellor, delivered the opinion of the court. He said : “ The statute applies as well to a loan of notes on usurious interest, as to a loan of cash.” Again, he said : u Here was nothing more than a simple exchange of notes, instead of a loan of cash. This was a clear evasion of the statute against usury.” In Dey v. Dunham, (2 John. Ch. Rep. 182, 193,) the same transaction is called by Chancellor Kent a lending of credit and security; and he too cited líente. Lowen with approbation. Fanning v. Dunham, (5 John. Ch. Rep. *246 122, 134,) brought up the same question, as well on a commission for endorsements as for making notes. The commission was two and a half per cent, with the liberty of one renewal. The loan of endorsements was placed by the chancellor on the same footing with that of notes in the other form. Speaking of both, he says : ££ Instead of being a cash advance, it was a loan of his creditj” and he declared both to be usurious, where the notes had but four months or less to run. There was an exchange of notes, or of endorsements for notes, and in this respect the case stood on the same footing as that of Dunham v. Dey, and Dunham v. Gould. In Steele v. Whiffle, (21 Wend. 103,) we followed that case, in also holding that the endorsement of a note for the purpose of raising money, was a loan of credit; and that taking a premium for the loan was usurious. I there remarked : £< I have no hesitation in saying that a man can no more lend his endorsement for a compensation beyond seven per cent., than his money. Though it is not cash itself, it is an equivalent.” This was thought,- on the argument of the case before us, to be a new application of the statute of usury. I there stated that I thought the case of Kent v. Lowen contained the true doctrine, and was in no way distinguishable in principle. I will add, that I thought the proposition too plain to require much support from authority ; and still consider it so. In looking through the books, I find many authorities—indeed all that go against indirect usury—sustaining the * same principle. I have now noticed a few .which are circumstantially in point, for I am unable still, as I was then, to discover any colorable distinction between receiving a premium of more than seven per cent, per annum for lending credit by accommodation acceptances or making notes, and endorsing. They are each equally loans of credit; and the language of the courts in Dunham v. Dey, Dunham v. Gould, and Fanning v. Dunham, applies mutatis mutandis in all respects to the loan of an endorsement. The king’s bench have declared that a loan of acceptances, at a premium of more than five per cent, per annum, is void. This court and the court of errors *247 have declared the same thing as to a loan of notes made by the lender; the court of chancery, the same thing as to the loan of endorsements ; and this we repeated in Steele v. Whipple. All three are but different modes of becoming security. The only difference is, that on an exchange of notes, acceptances or endorsements, the transactions are not on their face loans of accommodation paper. (Fell on Commercial Guaranties, 247.) The paper of one party is a valuable consideration for that of the other ; and there is some plausibility in such a case for saying there is no loan. Yet the courts have not allowed such a construction to prevail. Spencer J. said, it would be a judicial repeal of the statute. In Steele v. Whipple, and in the case at bar, the loan of credit was undisguised. It wras not even colored by an exchange of paper. To sanction such loans would be an act of repeal still more open and effectual. Usury might dismiss its devices and shifts, leave its hiding places and walk abroad in the public streets. {See also Flower v. Millaudon, 19 Louis. Rep. 187, 8.) In Dunham v. Gould, it was proposed to show that, according to a usage of merchants, where one advances his note in exchange for another, the former may charge" a commission of two and a half per cent, on the note so given in exchange; and that the like usage existed as to the endorsing of notes and bills of exchange, and the executing of custom house bonds. Chancellor Kent answered, that it was perfectly idle to talk of such a custom. He said, “ If there were such a local usage in New-York, it would be null and void, and could not be set up as a cover or pretext to trample down the law of the land.” That accommodation paper is always considered as a loan, may be seen in Reynolds v. Doyle, (1 Mann. & Grang. 753.)
In forming my conclusions upon the transaction in question, I have disregarded the distinction which has been some times taken by the court of chancery of this state, with regard to an exchange of notes. The distinction is this : that on A. giving his note to B., and receiving one of the same amount from B., A. may exact a commission, if it do not exceed the rate of in *248 terest at seven, per cent.' per annum for the time A.’s note has to run. Thus, if A.’s note run only four months, he may take a commission of two per cent., but not two and a half. (Fanning v. Dunham, 5 John. Ch. Rep. 122, 134.) If his note run six months, he may exact two and a half, and even three and a half per cent.; (Dey v. Dunham, 2 John. Ch. Rep. 182, 193 ;) and if nine months, five per cent. (Bullock v. Boyd, 1 Hoffm. Ch. Rep. 298.) I have disregarded this distinction for several reasons. In the first place, if the present transaction were an exchange, and not a naked loan of credit, it would be usury within that distinction. Secondly, it was not an exchange, but a mere loan of credit; and, thirdly, I am satisfied the distinction itself was inadvertently made. It is supported by no precedent, but is contradicted by many, and violates the laws of finance and commercial dealing. The cases cited have ad judged that a good note at nine months, intended for discount, is worth more than a like note at four months, or even thirty days • and, for that reason, they allow a commission to the lender, large in direct proportion to the time ■which the note has to run; whereas the law of discount, if it allowed a commission at all, would enlarge it inversely to that time. (M’Culloch’s Dict. of Com. tit. Discount.) They allow a premium of seven per cent, on a note at one year, and twenty-one per cent, on a note for three years &c.; but nothing on a note payable instanter. By the law of discount, the • latter note would be worth par; the year note seven per cent, less ; the three year, twenty-one per cent, less, and so in that proportion. An actual discount in gold or silver is better than either; and yet all the cases hold, that should A. pay specie, instead of his note for the same time with B.’s, and receive a premium beyond the discount on B.’s, it would be usury. In short, the effect is to charge B. with seven per cent, for a note at a year, on which he can obtain in the market ninety-three dollars only, the borrower thus being compelled to pay, in the whole, fourteen per cent, per annum. To apply the authorities, it is necessary to look at the real nature of an exchange of paper. It *249 is a transaction of perfect equality, on an agreement either to exchange notes, acceptances or endorsements, exactly the same as to times and sums, or to equalize the transaction in some other form, so that one shall advance no more money than the other. The parties purchase each other’s paper; and A., the. lender, may be considered as discounting, by his own paper, the paper of B., the borrower. This A. may do, if his paper be the shortest, say six months only, B.’s being at a year. The discount taken would then be by A. three and a half per cent., because his note would be worth at the bank three and a half per cent, more than B.’s would be to A. Suppose A. to 'go one step further, and give his note for cash down; he may take the whole seven per cent., because his note will bring that amount in market. It is then the same as'cash; but all the authorities hold that., even in this most advantageous advance to B., the purchaser can -take no more than the simple interest. The rule is, shortly, this: that a note made to raise money upon, and discounted at more than simple interest, is usurious and void. (Bayley on Bills, 575, Am. ed. of 1836, and the cases there cited.) This being so, it follows, a multo fortiori, that giving a note payable at a remote day, worth on its face seven or twenty-one per cent, less than the note discounted, or taken in exchange for it, is usury. The transaction in Matthews v. Griffiths, (Peake’s N. P. Cas. 200,) was an exchange of notes. A bill at thirty days, belonging to Mrs. Stewart, was discounted by the defendants at the usual discount, by giving their note in exchange payable three days after sight; and, because they did not also deduct the interest for the three days, the exchange was holden by Lord Kenyon to be unequal, and the transaction usurious. (Maddock v. Hammett, 7 T. R. 180, 181, S. P.) So far from the lenders of the exchange notes being allowed to charge a commission for the time their notes had to run, they were punished because they did not, for that very reason, let their notes go for less than their face, If the opposite principle were to prevail, then a bank, by refusing its bills and giving its post notes, might *250 exact not only the interest as a discount, but also a premium of seven per cent, per annum, for the time its notes had to run; and the longer the post note, the larger the premium. I need hardly say that such dealing was condemned as usurious by the supreme court of the United States, in Gaither v. Mech. & Farm. Bank of Georgetown, (1 Pet. 37, 41;) and State Bank of Elizabeth v. Ayers, (2 Halst. 130.) But the transaction is equally within another class of cases. A man wanting money is put off with goods or stock at more than they will fetch in market. This is usurious, because, in effect, the lender gets more than seven per cent. (Com. on Usury, 94,104.) In the same manner, the borrower wanting money is put off with a note at more than it is worth. The effect is identical. The trouble of collecting is no more than in the case of an ordinary discount ; the contingency of the borrower’s death or insolvency is, in no case, a legitimate foundation for demanding extra interest; (Colton v. Dunham, 2 Paige, 272, 3 ; Taylor v. Bell, 2 Vern. 171;) the pretence of remittance is out of the case; and there is no commission del credere. It cannot be brought within any of the authorities which allow commissions by way of compensation for services.
I have said that, in the case at bar, there was no exchange; but only the naked loan of an endorsement. On the ground taken, the same commission paid the plaintiff might also have been exacted by Barber and Leonard the first endorsers ; and in a line of several endorsers, the borrower may, in this way, before he reaches the bank, be stripped of half of his anticipated loan.
The relation arising between a man who endorses or puts his name to paper for the accommodation of another, is that of surety and principal. (Fell on Com. Guar. 238, 9, Am. ed. of 1825 ; Houle v. Baxter, 3 East, 177.) The nature of the obligation is, that there is nothing due from the principal till the surety shall have actually paid the money. (Fell on Com. Guar. 238, 9, Am. ed. of 1825; Reynolds v. Doyle, 1 Mann. & Grang. 753.) On doing so, he can recover nothing beyond his *251 principal, and his interest from the time of payment, with costs. (Fell on Com. Guar. 256, Am. ed. of 1825 ; Hayden v. Cabot, 17 Mass. Rep. 169.) The surety has precisely the same rights that the creditor has. (Fell on Com. Guar. 248,249.) On paying the debt, he comes equitably into the shoes of the creditor. He is the owner of the debt, and a court of chancery will decree that he be actually substituted, so as to take all the remedies of the creditor. (Id.) Why is the surety thus limited at law and in equity to his actual advances of money 1 Because, in truth and honesty, he is out of pocket to that extent only. The money he pays is not due on his entering into the obligation ; perhaps it will never fall due, and the intent of both parties is, that it never shall. It may possibly fall due at a future day on a condition yet to happen—the default of the principal and payment by the surety. Up to that time there is no debt at all, but the bare possibility of a debt. The surety contracts to make a prospective loan or advance which, in its owrn nature, will draw interest from the time when it is made ; and cannot do so before. There is a loan of credit which may mature into a loan of money ; but until it do so, it is a barren loan, an act of courtesy, against which, to be sure, an indemnity or counter security may be taken in any form; but nothing more, until it amount to an advance of money. To constitute usury, there need not be a technical loan. The statute speaks of the loan or forbearance of money. The contract to advance may be in any form, present, future, absolute or contingent. Any contrivance, says Lord Mansfield, if it be in substance a loan, comes under the word indirectly ; and when that is so, the wit of man cannot make shift to take the case out of the ■statute. (Floyer v. Edwards, Cowp. 114,115.) The practice of demanding a premium from the borrower, for the mere loan óf a responsible name on which to raise money, is equally within the principle of the statute with an extra premium for the money itself. The name is a sine qua non with the moneylender j and the borrower is prepared to make the requisite sacrifice in order to obtain it. The statutes of usury, says *252 Lord Mansfield, were made to protect needy and necessitous persons, who, from the pressure of their distress, are ready to come to any terms. (Browning v. Morris, Cowp. 792.) Hence, no case ever has allowed, and, in justice to the statutes of usury, never can allow exactions for the mere act of becoming security. The practice was put down at once in Lee v. Cass, (1 Taunt. 531.) In that case, Cass refused to discount a bill, unless the borrower would allow him to guaranty the payment at three and a half per cent; The borrower endorsed the bill accordingly, paying that sum. Cass’s counsel insisted that the premium was allowable because the guaranty was absolute, and there was no forbearance. Mansfield, Ch. J. said} there was forbearance till the bill became due • and the guaranty would not protect the borrower against a bona fide holder, though he admitted the borrower might recover over. He also said, if the objection were valid, it would give complete facility and security to usury. The case at bar is much stronger. The forbearance itself was merely colorable; not on money advanced, but on money possibly to be advanced } for the endorsement was collateral, not absolute, and the plaintiff had the security of both maker and endorsers, that whatever he might be compelled to advance should be refunded. The notes were payable at his own bank, obviously intended for discount, and one of them actually discounted there. For such a risk he charges the borrower seventy-five to ninety dollars. The transaction is, perhaps, not quite so gross and unblushing as that in Steele v. Whipple ; but the principle is the same, whatever the amount. A man may take discount in advance, and, if you please, interest in advance on short paper, where he makes an actual disbursement; but was it ever heard that he might do the same thing in anticipation of a disbursement which he may possibly be obliged to make, which he will probably never make at all, and which if he do, must be reimbursed by others against whom he holds counter security 1 A man cannot take interest for a debt not yet due. I know the rule is clogged with some qualification where the debt is absolute ; *253 but no exception can ever be allowed where it is inchoate, and the borrower is already paying interest to another. It is shameful and scandalous oppression on its face. By what rule can an endorsement, and the consequent contingent forbearance, be estimated 1 Assuming the counter security to be good, as we always must, and the endorser always does, the whole is a mere form. It costs him nothing, and it never will cost him more by way of forbearance than he can recover over. He indeed lends a chose in action ; but the money he may advance under it, with interest on that, is to be restored at all events'. If he take or contract for more, it is usury within all the authorities. It is so within the express terms of Kent v. Lowen, (1 Campb. 177,) which has never been questioned. The precise point was there decided, unless we run into the absurdity of saying that an acceptance is worth less than an endorsement. Coates & Co.3 in terms, lent their acceptance for three months on receiving counter security at three months, and charged a commission. Park, as counsel, put the very point. He said, the commission was to be considered, not as interest, but as a compensation for trouble in accepting the bill and accommodating the defendant. Per Lord Ellenboroúgh : There is no color for the commission, and the two and a half per cent, must be considered as usurious interest. The case was not placed upon the time, but on thefact that any commission at all was taken. The borrower had to pay interest to another on getting the bill discounted, for the three months it had to run. By paying any thing for the loan of the bill itself, he was charged with extra interest. He secured the lender of the bill a repayment of such principal as he might be obliged to pay on his acceptance becoming due, with interest oh such contingent advance ; and that was all to which he was entitled. The case is quatuor pedibus with the present. I mentioned and stated this case before, in another connection. We saw then, and I will now add, that it was held to be lawr by this court in Dunham v. Dey, by the court of chancery in Dey v. Dunham, and by this court again in Steele v. Whipple. The case is natural *254 ized here, without qualification ; nor can human ingenuity distinguish it from the case at bar, farther than to say that this is still stronger against the plaintiff. That was a direct guaranty ; this a collateral one. In that case the plaintiff was an innocent holder; in this, he is the very party to the usury.
I am aware'the modern notion on the subject of usury is so latitudinary, that judges are put on the defensive for holding almost any thing to be within the statute. Lord Kenyon thought he should be so, on deciding Matthews v. Griffiths; and it turned out, as appears by what he afterwards said in Maddock v. Hammett, that he was not disappointed. One can scarcely see why he should have been censured, unless for refusing to wink at small plunder. Even that case, when fairly understood, will be seen never to have been shaken. But above all, I protest against a similar censure upon judges for repudiating such bold and bungling usury as was disclosed in Kent v. Lowen and Steele v. Whiffle. In all cases like them, the transaction is mathematically usurious. Res ifsa loquitur. Where there .is a dispute about the real character of the transaction—as, whether it be a sale, instead of a loan, forbearance or device—the question is put-to the jury. But to such a case as Kent v. Lowen, and various others which I have noticed, every one will apply the language of Lord Kenyon in Matthews v. Griffiths. “ Now the cause is over,” said he, “ I must say one word for myself. I am most clearly of opinion that this is usury. Whether the party (the borrower of the bill) consented or not, can make no difference. All men, lawyers or not lawyers, must agree on this case. It is so clear that no two men in the profession can entertain different opinions on it.”
On the whole, I differ with the referee. He considered the transaction between Muir by his agent Burr, and the plaintiff, as the sale of a guaranty or endorsement. My own view is, that it was a loan of credit, at a usurious rate of interest; and that, therefore, the notes in question, having come into the plaintiff’s hands as a further security or extension of the loan, *255 are void. I am of opinion that the report should be set aside, and a rehearing granted; the costs to abide the event.
Motion denied.

 See this, among the cases decided by the court for the correction of errors. post