DUNHAM
v.
DEY.

                                                    Judgment for plaintiffs.

                              DUNHAM *against* DEY.

*Where A. re-*       THIS was an action of *assumpsit*, brought by the plaintiff
*ceives B.'s note,*
*on giving B. his* against the defendant, as endorser of a promissory note, dated
*note at 10 days,*
*for the purpose* the 8th of *May*, 1812, drawn by *Matthias & William Ward*, for
*of raising mo-*
*ney on B.'s* 750 dollars, payable to the defendant, ten days after date. The
*note, and pays*
*B. two and a* cause was tried at the *New-York* sittings, in *April*, 1814, before
*half per cent.*
*commission, this* Mr. J. Yates.
*is a loan within*
*the statute of*      The note in question was one of several notes executed by
*usury, and A.'s*
*note is usurious* *M. & W. Ward*, dated the 8th of *May*, 1812, and payable to
*and void.*
*Evidence* different persons, at different periods; in the whole amounting
*that it was the*
*usage of trade* to 9,000 dollars. These notes were delivered by *M. & W.*
*to take two and*
*a half per cent.* *Ward* to the plaintiff, in exchange for his notes, payable at dif-
*commission on*
*the exchange of* ferent periods, and amounting to the same sum of 9,000 dollars.
*paper, is inad-*
*missible; for* This exchange was made on the 8th of *May*, 1812; and *M. &*
*usage is of no*
*avail, if the* *W. Ward* paid the plaintiff, as a commission for making the ex-
*transaction*
*comes within* change, two and a half per cent., amounting to 225 dollars,
*the meaning of*
*the statute.* which was paid, at the time, in money. It appeared that *M. &*
*It seems that a*
*person may law-* *W. Ward*, when this transaction took place, were indebted to the
*fully receive a*
*commission for* plaintiff, for borrowed money, in the sum of 4,000 dollars. On
*becoming secu-*
*rity for another.* the 7th of *May*, the plaintiff wrote a letter to one of them,
*It seems that*
*the practice of* couched in the following terms : " If the sum borrowed is not
*the banks, of is-*
*suing post notes,* returned, or some person's check left, payable to-morrow, in
*is not, in itself,*
*usurious.* whose signature reliance can be placed, and that attended to
            before half past 4 o'clock, *this day*, I shall take such steps for
            the recovery of it, which may be considered of an unpleasant
            nature." The plaintiff, at this time, had a judgment which had
            been entered up against *Matthias Ward*, on a bond conditioned
            for the payment of 20,000 dollars.

                On the same, or the next, day, *M. Ward* applied to the plain-
            tiff for an advance in notes of the plaintiff. The plaintiff asked
            what security he would give; *Ward* then exhibited a list of

names of persons whom he would get to endorse his notes, and gave as a reason for wishing the plaintiff's note, that he could negotiate it better than his own; and it was understood that *Ward* was to negotiate the plaintiff's notes to raise money, out of which the debt of the plaintiff was to be paid; and it was accordingly paid on the 8th of *May*.(a) It was testified, that the application for the loan of the notes was separate and distinct from any other transaction.

Evidence was given as to the usage and custom of merchants; and several witnesses were examined, some of whom stated it to be usual and customary to charge and receive two and a half per cent. on the exchange of paper, on advancing a responsibility; but others knew nothing of any such custom.

The judge charged the jury, that if they believed the transaction between the plaintiff and *Ward*, to have been for the purpose of raising money at a greater rate of interest than seven per cent. per annum, which they were warranted to infer, from the evidence before them, then such intention made it intrinsically a loan, and the transaction was usurious and void; that the evidence of usage was not sufficient, and, if proved, that it could not prevail against the existing law.

The jury found a verdict for the defendant.

A motion was made, on the part of the plaintiff, to set aside the verdict, and for a new trial.

(a) The notes given by *M. & W. Ward*, were as follows:

| One note payable at 10 days after date, (the note in question,) for | 750 dollars. |
|---|---|
| 20 | 750 |
| 30 | 750 |
| 40 | 750 |
| 50 | 750 |
| 60 | 750 |
| 70 | 750 |
| 80 | 750 |
| 90 | 750 |
| 100 | 750 |
| 110 | 750 |
| 120 | 750 |
| | 9,000 |

For which *Dunham* gave, in exchange, his notes,

| One note at 2 months, for | 2,250 |
|---|---|
| 3 | 2,250 |
| 4 | 2,250 |
| 5 | 2,250 |
| | 9,000 |

*Hoffman*, for the plaintiff. This is clearly not a usurious loan, within the words of the statute; nor does the transaction show a shift or contrivance to get rid of the statute. It is no more than the charge of a regular mercantile commission of 2 1-2 per cent. The banks often issue *post notes*, payable at distant periods, for which they receive the amount in cash; yet no person has considered such a transaction as usurious, within the meaning of the statute. A commission is often paid for becoming surety at the custom house, or for endorsing bills of exchange. There was, also, sufficient evidence of a usage of trade, to repel the charge of usury. All these considerations would have had weight with the jury, if they had been permitted to deliberate upon them; but the judge was positive in his charge to them, that the transaction was usurious, that the evidence of usage was not sufficient, and, if clearly proved, would be of no avail.

*Wells*, and *D. B. Ogden*, contra. The words of the statute are broad enough to reach this case; but it is sufficient if it comes within the intent and scope of the statute. This is a palpable contrivance to raise money at more than the legal rate of interest. The case of a surety or guarantee is not analogous. That is not a loan. A commission for endorsing bills of exchange, which pass into foreign countries, may be allowable, as it is merely to give credit to the bill. So, *post notes* circulate abroad, and do not return within the times at which they are made payable. But if these are usurious practices, they cannot justify similar practices. To allow them would, virtually, be a repeal of the statute.

In *Parr* v. *Eliason*,[*] an agreement, on discounting a bill, to take another bill, which had time to run, as cash, was held usurious. In *Kent* v. *Lowen*,[†] the very point was decided by Lord *Ellenborough*, that a commission of 2 1-2 per cent., for accommodating another with an acceptance, was usurious. The same point was, afterwards, decided by *Le Blanc*, J., in *Ackland* v. *Pearce*:[‡] "In all questions of this kind," Lord *Mansfield* observed, in *Floyer* v. *Edwards*,[§] "we must get at the nature and substance of the transaction;" and that where there is a loan of money for more than legal interest, "the wit of man cannot find a shift to take it out of the statute." Usage cannot be set up to avoid the provision of a statute; the evidence of usage, there-

[*] 1 *East*, 92.

[†] 1 *Camp. N. P. Rep.* 177.

[‡] 2 *Camp. N. P. Rep.* 599.

[§] *Cowp.* 112.

fore, cannot avail. It becomes the duty of the court to frown upon such usurious practices.

*T. A. Emmet*, in reply. The usage is universal, and co-extensive with commerce, to allow a commission, on a lending of a credit, guaranty, or responsibility. True, such a usage may be made, sometimes, to cover a usurious transaction; but the only question is, has there been an attempt to evade the statute? The most enlightened writers on political economy have questioned the utility of statutes against usury; believing it would have been better to have left each individual case to a court of equity to decide on the good conscience of the particular transaction. The legitimate object of the statute, no doubt, is to protect the ignorant, inexperienced, and needy, against the oppression of the rich, and the arts of avarice. It ought not to be extended to commercial dealings between merchants, who understand each other, who calculate all the advantages which are to result from their various operations, and who know their own interests too well to require any legislative aid or protection.

This is a question as to a mere mercantile transaction, in the exchange of paper. The plaintiff had no concern with the purpose for which *Ward* wanted the notes, nor with the manner he intended to use them. It is a very interesting and important question to the commercial world, whether such an exchange of paper is, in every case, to be considered as a cover for a usurious loan. To make it usury there must be a *loan*, and a sum taken for a forbearance of payment. This is not a *loan*; it is a mere barter or exchange of notes; and there may be a great difference in the value of the things exchanged. In barter, a party may lawfully take *boot*. The note or thing is not to be returned; it is sold or exchanged; and it is like the exchange of a chattel. In a *bona fide* commercial transaction, a merchant may receive a commission for lending his name or credit, and taking the risk of payment; what is done with the note, afterwards, cannot affect him. In *Floyer* v. *Edwards*, the distinction was taken between a *bona fide* commercial transaction, and a mere cover for usury; the former will be supported, though it exceeds the established rate of interest.

These *extra* allowances, in trade, not being for the forbearance of a loan, are not within the words of the statute; and the

ALBANY,
January, 1816.

DUNHAM
v.
DEY.
* 1 Bos. & Pull.
144.   Ord.  on
Usury, (3d. ed.)
58, 59.

usage of trade is not so much to show that they are warranted, as to repel the presumption that might, otherwise, arise, that they were, in truth, paid as usury, though under the name of commissions, with a view to evade the statute.*

SPENCER, J., delivered the opinion of the court.

If the case was correctly submitted to the jury, there is an end of the question; for, certainly, they have considered the transaction as usurious. The plaintiff's counsel complain, that the judge, at first, permitted them to go into evidence of usage, and then withdrew it from the consideration of the jury; and they now insist that proof of usage was admissible, to show that the transaction was not intended as a cover for usury, and that, the proof having been given, the jury ought to have been permitted to take it into consideration, in deliberating on their verdict. They further insist, that the transaction, *per se*, is not either within the letter or the mischiefs of the statute.

In *Floyer* v. *Edwards*, (*Cowp.* 112.,) Lord *Mansfield* permitted an inquiry as to the usage of the trade; but he said the practice and usage would avail nothing, if meant as an evasion of the statute, for that usage certainly would not protect usury, but that it went a great way to explain a transaction, and was, in that case, strong evidence to show that there was no intention to cover a loan of money. These observations were applied to the case of a sale, and, under the circumstances of that case, it might have been proper, and probably was so, to inquire into the usage of that particular branch of business; but it cannot be admitted, as a general rule, that usage may, in all cases, be given in evidence, or that the usage, if proved, shall determine whether the transaction is usurious or not. Every case must, in a great degree, depend on its own circumstances; and Lord *Mansfield* lays down the rule, in the case already cited, with much perspicuity and force: he says, "it depends, principally, on the contract being *a loan*; and the statute uses the words 'directly or indirectly;' therefore, in all questions, in whatever respect, repugnant to the statute, we must get at the nature and substance of the transaction; the view of the parties must be ascertained, to satisfy the court that there is a loan and borrowing, and that the substance was to borrow, on the one part, and to lend, on the other; and where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the

statute. *If the substance is a loan of moneys, nothing will protect the taking more than 5 per cent.*; and though the statute mentions only, ' for loan of moneys, wares, merchandises, or other commodities,' yet, *any other contrivance, if the substance of it be a loan, will come under the word ' indirectly.'* " It is impossible to conceive a more just, sound, and lucid exposition of the statute of usury, than the one given by this really great man.

If, then, the evidence before the jury, independent of the usage, exhibited a transaction, the *substance of which was to borrow on the one part, and to lend on the other*, at a greater rate of interest than 7 per cent. per annum, and if this entered into the concoction of the bargain, then, undoubtedly, the transaction was usurious, and the notes were contaminated by it, and void. In this point of view, the usage was properly laid out of the case, because it does not go to show, that the negotiation between the plaintiff and *M. & W. Ward* was not a loan on the one side, and a borrowing on the other; but its tendency was to prove, admitting it to be so, that there was a usage to lend and borrow at a higher rate of interest than that allowed by the statute.

I perfectly concur in the opinion expressed by the judge, at the trial, that the evidence in this case warranted the jury in inferring, that the transaction between the plaintiff and *M. & W. Ward* was for the purpose of raising money at a greater rate of interest than 7 per cent., and that that made it, intrinsically, a loan, and, therefore, the transaction was usurious and void.

The testimony clearly shows, that the object of *M. & W. Ward*, in the exchange of the notes, was to obtain the plaintiff's notes, for the purpose of raising money on them, and that his notes were considered better adapted to that object than the notes which *M. & W. Ward* gave in exchange ; and although the witness declares, that the exchange of the notes was separate and distinct from the money *M. & W. Ward* owed the plaintiff, yet we find that the plaintiff's notes were immediately used by *M. & W. Ward*, to raise money on, and that the plaintiff was immediately paid the 4,000 dollars due to him. This debt, undoubtedly, was distinct from the exchange of the notes, but we have a right to infer, and cannot but believe, that *M. & W. Ward* entered into the arrangement under the pressure of that debt, and that it was in the contemplation of the parties, that

the plaintiff should be forthwith paid, out of the moneys to be raised on his own notes, by *M. & W. Ward.*

The judge, to be sure, gave his opinion to the jury on the evidence; this, however, does not derogate from the full weight and effect of the finding; the jury had a right to draw their own conclusions from the evidence before them, and it is as fully their verdict, as if no opinion had been expressed by the judge. In a doubtful case, or where the weight of evidence is against the verdict, I do not mean to be understood that, on a motion for a new trial, some stress might not be laid on the circumstance that the judge gave his opinion on the evidence; but, in this case, I clearly think no argument, favourable to the plaintiff, can be drawn from that consideration.

Why was not this a lending on the one part, and a borrowing on the other, indirectly? We have the high authority of Lord *Mansfield*, that any contrivance, if the substance of it be a loan, will come under the word "*indirectly*." What is the difference between a man's lending his notes to raise money upon, taking more than legal interest, and lending his money? I confess I perceive no other difference than this, that the borrower of the notes must, probably, pay more usury to get them converted into cash; but the transaction is, substantially, a lending of money; and I agree with the defendant's counsel, that, if this device be tolerated, the statute is judicially repealed.

This very case has occurred in *England*, and been decided by Lord *Ellenborough* and Justice *Le Blanc*, (in 1 *Camp*. 177. and 2 *Camp*. 599.) In the first case, which was a suit against the maker of a note, for 153*l.* 15*s.*, payable in ninety days, to Mess. *Coates & Co.*, and endorsed to the plaintiffs, the defence was, that the note had been given upon a usurious agreement, between the maker and payees; and it was proved, that *Coates & Co.* agreed to accommodate the maker with their acceptance at three months, upon receiving his note for the same sum at ninety days, together with two and a half per cent. commission. Lord *Ellenborough* held, that there was no colour for a commission, and that the two and a half per cent. must be considered as usurious interest, and the commission a mere cloak for usury. The defendant had a verdict, and we do not find that the decision was ever questioned. In the other case, Judge *Le Blanc* adopted the same principle, and although the case was reviewed, his decision, on that point, was not objected to.

Here I might conclude, but it is fit that notice should be taken of some arguments used by the plaintiff's counsel, drawn from what they consider analogous cases. It is said that it is the usage for endorsers of bills of exchange, and sureties on custom-house bonds, to take a per centage for advancing their responsibilities. I see nothing improper in this; there is no loan of money, directly or indirectly, in either of these cases; they come neither within the terms or mischiefs of the statute, and they are innocent transactions. The practice of issuing post notes by the banks, is supposed to justify the taking commissions on advancing notes, under the circumstances attending this transaction. That practice is extremely well considered in *Hammett v. Yea*, (1 *Bos. & Pull.* 144.,) and Ch. J. *Eyre* draws the distinction, with great accuracy, between what will, and what will not, render such a transaction usurious. A person applies to a banker to have a note discounted; the banker agrees to discount, and is ready to pay the money immediately, after deducting the interest for the time the note has to run; the applicant then asks for a post'note, payable at a future day, for his own accommodation, and this is given him. Ch. J. *Eyre* held this not to be usurious, and he considered it as two contracts, the one for a loan, and the other independent of the loan, and for a remittance; but he held that, had the banker imposed this remittance on the borrower, as a term of the discount, it would have been usury: and in this opinion the other judges concurred. This case shows, I apprehend, the practice of the banks to be correct; and it fully shows that this transaction, in this case, is usurious, because, here, the two and a half per cent. was imposed as a term on *M. & W. Ward*, and was part and parcel of the contract.

The plaintiff, independent of the two and a half per cent., was to derive considerable advantage from the transaction; the notes he took from *M. & W. Ward* fell due some time before those he gave in exchange; but it is not necessary to inquire, whether that is also usury, the other point being decisive.

Motion denied.