Ruefin, C. J.
 

 The objection to the evidence is untenable. The defendant had to account for the non-production of the notes at the trial, and his declaration, contemporaneous with the delivery of them to him, and his going, apparently, to burn them, was proper evidence, as tending to est&blish their destruction. It is said, however, that the other part of the declaration ought not to have been received, because the effect was to raise an inference, that those notes form the consideration oí the bond sued on, and the party ought not to be allowed thus to fabricate evidence for himself. But that is not a proper view of the subject. The witness Miller had stated, that it appealed on the
 
 notes
 
 themselves, under the plaintiff’s own hand, that another security had been taken in satisfaction of them. The defendant, then, did no more than express regret at having given the note, thus admitted by the plaintiff. His declaration introduced no new matter in respect to giving another security, but amounted .to his admission mei-ely, that, as stated by the plaintiff, he had given some security in lieu of those then delivered to him. It still lay on him to connect the present bond with the notes, by the other evidence, which he offered to that point.
 

 Upon, the main question there seems to be no doubt. Assuming the evidence to be true, it very clearly establishes the usury. It is true, that persons may exchange notes .for their.mutual accommodation, with a view to raise money, by having them discounted, and they will l'espectively constitute a consideration, which will make them all binding
 
 *337
 
 on the makers — provided, however, they be not made with a view to their being illegally discounted. But a note, made to the intent of being usuriously discounted for the accommodation of the maker, or payee, or both of them, would not be obligatory between the parties, and is void in the hands of one who discounts it at a rate exceeding six per cent. It is plain, when a man wants to borrow money at an illegal rate, that, within the mischief and the meaning of the act, there is no difference between making his, own note to the lender, and getting a friend to make a note to himself, and his passing that to the lender. The friend’s note, is, in truth, as much made for the borrower’s use as his own note would be; and it is not the less so, because, at the same time, he made to his friend a note for the same amount, to be used by the friend for a like purpose of his own. Each note is, in its concoction, and in the use made of it, in contravention of the statute, and is avoided by it. The purposes of the act require, that, whatever shape may be given to the dealings, the contract should be held void, if in reality there was a lending and borrowing. It follows that every case is open to evidence of the intent and purpose with which the security is made. If the transaction appear upon the evidence to be a contrivance, under color: of doing a different and lawful thing, of effecting in fact an illegal borrowing and lending, it is vicious; for the statute applies as well to indirect, as to direct, modes of dealing, and no shift for the purpose of veiling the intention can make the case different from a borrowing and lending in the simplest form, provided that in substance there was a borrowing and lending. That was the fact here; for the defendant’s notes, being made for the accommodation of his brother Henry, had no vitality, according to the intention of those parties, until they passed into the plaintiff’s hand for the money advanced by him to Henry. It was,, therefore, in substance, a borrowing by the party, who was intended to get and did get the money from the plaintiff'
 
 *338
 
 upon the discount of the note, thus made for the accommodation of that party. Whether the plaintiff was cognizant of the intention of the two Fullenwiders in making the notes is not material to the question under consideration; for the statute has no provision in favor of the assignees, and it is the fact, and not the assignee’s knowledge of it, which determines the validity of the instrument. That is,
 
 a fortiori,
 
 true of an instrument, made for the express purpose of being usuriously discounted, in the hands of the person, who thus discounts it, though he may not be privy to the making of the instrument, or to the intent with which it was made. If it were not so held, the most flimsy device would be allowed to defeat this important statute; and, indeed, it might be considered as judicially repealed.- These positions are fully sustained by numerous adjudged cases; and they are decisive of this controversy ;
 
 Floyer
 
 v
 
 Edwards,
 
 Cowp. 114,
 
 Ruffin
 
 v
 
 Armstrong,
 
 2 Haw. 411,
 
 Dunham
 
 v
 
 Day,
 
 13 John. 40,
 
 Munn
 
 v
 
 Commission Company,
 
 15 John. 44, 56,
 
 Bennet
 
 v
 
 Smith,
 
 15 John. 355. Of course, the taking of a new bond by the usuer, himself, cannot remove the taint in the original transaction. It was an inherent vice in it, and attaches itself to every security taken by the lender, including the illegal-interest or any- part of it.
 

 Pee Curiam. Judgment affirmed;