By the Court—Woodruff, J.
The defense set up in this action embraces four grounds upon which the. defendant insists that he is not liable upon the check in controversy, which, though not separately stated as distinct defenses, as required by section 150 of the Code, are found in facts which are averred in the answer.
1st. That the check was obtained from the defendant by representations made to him by the plaintiffs’ agent, which representations were of a material fact, known to the agent to form an inducement to the giving of the check, and which were relied upon by the defendant, but which representations were false.
2d.- That the sole consideration of the check was the sale to the defendant of a promissory- note of Lane, West & Co., and that that firm had failed when the sale was made, and so the defendant had a right to rescind the contract, return the noté and refuse to pay the check.
8d. That the plaintiffs paid “no legal consideration for the note so sold,” which averment the defendant now claims to have been sufficiently established by the evidence that the note was made by Lane, West & Co., to be sold in the market, and the plaintiffs received, the note in exchange for their own note and received two^and a half per cent for making the exchange, and the defendant claims that this rendered the note usurious in the plaintiffs’ hands and void, and therefore that the defendant could not recover thereon, and so the consideration for the check has failed, or that in truth there was no legal consideration for the check.
And 4th, That the defendant having himself bought the note at a discount greater than the lawful discount at 1 per cent, the transaction between him and the plaintiffs was void by reason of the usury which the defendant reserved, and he may repudiate the transaction on that ground.
If either of these defenses is sufficient in law, and the facts constituting such defense are either admitted or are clearly proved without contradiction, then the direction to the jury was proper; there was nothing in dispute which ought to have been submitted to the jury in any other form.
On the other hand, if these defenses are insufficient in law, or the state of the proofs was such that the Court could not properly hold as matter of law that a defense was established, then so far *327 as material facts were in dispute the case should have been submitted to the jury under appropriate instructions. Unless the pleadings and proofs presented such a case that a verdict for the plaintiffs would have been against law or against evidence a peremptory instruction to find a verdict for the defendant was not warranted.
To consider, then, the grounds of defense relied upon, reversing the order of the'foregoing statement,
1. It is insisted that the defendant having purchased the note of Lane, West & Co., from the plaintiffs, at a greater discount than the legal rate for the time it. had to run, is not bound to pay the check given for the consideration of that purchase. This assumes that the transaction between Mills (the broker) and the defendant was usurious, and that the transaction between them was in substance a loan by the defendant upon usury. And it argues that the lender upon usury may avoid the contract on the ground of his own reservation to himself of more than legal interest.
This is a novel view of the design and effect of the laws against usury. They have heretofore been regarded as designed for the protection of borrowers only, and so far as they are punitive in their nature are said to be intended to punish the usurious lender. We think -he cannot allege his own violation of the statute as a reason for not paying his check. (La Farge v. Herter et al., 5 Seld., 241.)
Again, as between the defendant and the plaintiffs, (or Mills, the agent,) if the note was a valid note in the hands of the plaintiffs there was no usury. Ever since the final decision in Cram v. Hendricks, (7 Wend., 569,) it is settled in this. State, that the holder of a promissory note which is valid in his hands may sell it for any price he thinks proper; and where, as in the present case, the vendor does not indorse the note, it was not before that time, doubtful that the transaction was perfectly valid. A promissory note is as much the subject of sale as any other species of property. (3 Wend., 62; 8 Cow., 685; 15 J. R., 44, and cases cited in the notes to the 2d ed.)
Whether the note sold to the defendant was or was not valid in the hands of the plaintiffs will be presently considered. That is the subject'of another ground of defense, viz., failure of con *328 sideration. But in regard to the claim that there was usury between the defendant and the plaintiffs, it must suffice to say: that the defendant cannot set up his own usurious reservation as a defense; that if the note was valid in the hands of the plaintiffs, there was no usurious reservation; and if the note was void in the plaintiffs’ hands so that they could convey no title, that amounted to a failure of consideration, and we will inquire into it when we discuss that point, which is next in order, viz.:
2. It is averred in the answer that the note which was sold to the defendant “ came into the hands of the plaintiffs without any legal consideration paid ■ therefor, whatever.” Under this averment the defendant claims that he may properly insist that the plaintiffs received the note from the makers'upon a usurious contract with them, and so acquired no legal title. It requires very great liberality in the construction of the pleadings to warrant such a defense under such an averment. We have, however, considered the question so raised upon the merits as if the averment were sufficient to raise the question. The note, for which the check, now in. suit, was given, was made by Lane, West & Co., for sale in the market to raise money for their use. It was placed in a broker’s hands to be sold. He took it to the plaintiffs, in July, before its maturity, and the plaintiffs declined purchasing it. But after some negotiation the plaintiffs consented, as the broker testifies, to exchange their note, for the same amount, for the note referred to, the broker allowing them two and a half per cent on the face of it on the exchange. The testimony of one of the plaintiffs, is, that after he had declined buying it, the broker proposed that the plaintiffs should give him their credit for it, and being told that when they sold their credit they charged two and a half per cent, the broker assented and paid the two and a half per cent for the exchange of notes.
Where a transaction is in substance a loan of money, goods or things in action, a reservation of a greater sum than the legal discount makes the transaction void, whatever device is adopted to conceal its true nature, or by whatever form the object is accomplished.
Two and one-half per cent, deducted in July, from the face of a note, which was payable in October, is a greater deduction than after the rate of seven per cent per annum.
*329 It was held in Dunham v. Dey, (13 J. R., 40,) that where an exchange of notes was made for the purpose of raising money, at a greater rate of interest than seven per cent per annum, and the transaction was so understood, and the plaintiff charged under the name of commissions, for advancing his notes and making such exchange, a greater sum than the legal rate of interest, the transaction was intrinsically a loan and usurious and void.
In Dey v. Dunham, (2 John. Ch., 192,) where the defendant gave his note in exchan'ge for another of the same amount, both having six months to run, and charged two and a half per cent commission for his risk, Chancellor Kent held that this was .not usurious, because the commissions did not exceed the legal rate of interest for six months. And the Chancellor adds, “if he had taken more than at the rate of 7 per cent per annum for the amount of his notes for the time they had to run it would probably have been usury in disguise.” (Referring to 13 J. R., 40, and 1 Camp. N. P. R., 177.)
In Dunham v. Gould, (16 J. R., 367.) the plaintiff exchanged his own notes for others and charged two and a half per cent commission, that being more than after the legal rate of discount for the time the notes had to run, and the jury found that this exchange was for the purpose of raising money at a greater rate of interest than seven per cent per annum, and the Court of Errors unanimously affirmed a judgment for the defendant. The verdict'was deemed to establish that it was a shift or contrivance to get rid of the statute of usury.
In Fanning v. Dunham, (5 Johns. Ch., 122,) the transaction was similar, and the Chancellor being of opinion that the transaction was an exchange of notes for the purpose of raising money by the one party, and for the purpose of exacting a premium of two and a half per cent for the loan of his paper by the other, held the transaction void for usury.
In Steele v. Whipple, (21 Wend., 103,) a charge for indorsing and procuring the note of another to be discounted in the bank had been made which exceeded the rate of seven per cent per annum, and the Supreme Court held, such indorser having taken up the note, that the note was void in his hands for usury. Mr. Justice Cowbn says: “If one man give his acceptance or note for another, on an agreement for a compensation, it has long been *330 settled that this is usury per se.” * * * “I have no hesitation in saying that a man can no more lend his indorsement for a compensation beyond seven per cent, than his money.” ■
On the other hand, it was held 'by the Supreme Court in Trotter v. Curtis, (19 J. R., 160,) that a charge by a commission merchant of two. and a half per cent, in addition to interest, for advances made (without funds in hand) to pay the-drafts of' his principal, was not usurious, if not intended as a cover with a usurious intention; and in Suydam v. Westfall, (4 Hill, 211,) the Supreme Court held that an agreement by the principal to keep his commission merchant in funds by shipments of produce, and to pay him two and a half per cent on all advances met by the commission merchant otherwise than with produce, was not necessarily usurious; and the jury having found that the charge was a reasonable compensation for trouble, and warranted by the usage of trade, the transaction, was sustained.
In Ketchum v. Barber, it was held by the Supreme Court, (4 Hill, 244,) that the bona fide sale of one’s credit by way of guaranty or indorsement, though for ■ a compensation exceeding legal interest, is not usurious, if the transaction be unconnected with a loan between the-parties. The plaintiff had charged two and a half or three per cent for indorsing the paper of another. In the opinion in this case, Chief Justice Nelson repudiates the idea that the question- of usury or no usury depends on the inquiry whether the per centage charged exceeds seven per cent per annum for the time the credit is to continue, and holds that an extravagant charge for a guaranty purely as such, is no more usury than if exacted for goods or stocks, or any other species of property, and he reviews the previous cases bearing on the question. (See Oakley v. Boorman, 21 Wend., 588.)
But in the Court of Errors, although the judgment of the Supreme Court was affirmed on another ground, a majority of the judges appear to have been of opinion that a charge for merely indorsing another’s paper constitutes usury if it exceed the rate of seven per cent per annum for the period of credit.
Assistant Vice-Chancellor Sandfobd, in The New York Dry Dock Co. v. The American Life Insurance and Trust Co., (3 Sand., Ch. R., 256,) reviews the doctrines applicable to an exchange of paper and a sale of credit, and he also repudiates the idea that *331 when a charge of commission for lending one’s credit is tolerated at all, it is to be limited to the legal rate of interest; and his conclusion, from an examination of the cases, is, that wherever a commission is charged by the lender, unless it be for some real service distinct from the loan itself, and then be a moderate and reasonable charge, it must infallibly be referred to the use of the credit loaned, and would constitute usury. Upon all the facts in that case, however, he finds that the transaction was a loan, intended to enable the borrowers to obtain money, for which they, in the first instance, applied to the defendants, and that the various reservations could not be referred to anything but a compensation for a loan, which at first consisted of certificates of deposit, and when they were paid by the defendants, the transaction was in truth a loan of money.
If the question were to be determined according to the weight of authority resulting from the cases above mentioned, it would seem that a reservation of a commission upon an advance of one’s credit, whether by way of indorsement upon paper made to be discounted by a third party, or by way of exchange of notes, if not invariably usurious, whatever be the rate, is so when the commission charged exceeds the rate of seven per cent per annum for the time the credit is to run, unless it is shown that the commission was not charged as and for compensation for the advance of credit and the risk of loss, but for some other and distinct consideration, as for services or trouble to be taken or performed.
And when the case last cited came before the Court of Appeals, Mr. Justice Cady in his opinion insists strenuously upon the law as in substance thus stated, and holds that an exchange of credits with a reservation of more than seven per cent per annum to one of the parties, is usurious arid void.
But we are informed by the report of the case in the Court of Appeals, (3 Comst., 362,) that a majority of the court concurred in the reasons, and placed their judgment upon the grounds stated in the opinion of Mr. Justice Gardiner.
In that opinion he begins with dissenting from the views of Mr. Justice Cady on the very point we are now considering. He defines credit as “ the capacity of being trusted“it cannot be loaned.” “ When A., for a consideration paid by B., executes a *332 promissory note and delivers it to B. to be used for his benefit, it is not a chose in action in the hands of B., and yet he has received precisely what he contracted and paid for, namely: the privilege of availing himself of A.’s credit with third persons. When the credit is used and a trust obtained, its whole office is fulfilled; it becomes functus officio, and in the nature of things, can never be returned. The credit of one person may be rendered available to ■ another by gift or sale, and in no other way. This may be done * * as an exchange of notes, which is a sale of one promise for another. * * When the responsibility is incurred gratuitously, it is, in popular language, a loan; and when for a consideration, a sale of credit. In this sense, a sale of credit is no more within the prohibition against usury than a sale of merchandise. It is sometimes asked, Why should a man be permitted to receive ten per cent on an exchange of notes, when, if he advanced money on the same security, he would get but seven? The answer is, Eor the same reason that he is permitted to receive $20 for six months’ use of furniture valued at $100. The one is prohibited and the other not.” After further like propositions and a review of some of the cases, he says: “ Neither sales of credit nor loans or sales of property other than money are touched by the statute. It is not enough that the vendee wants money and that this is known to the opposite party. Neither the necessities of the vendee nor the use he contemplates making of his purchase will deprive the vendor of his right to determine for himself the terms on which he will part with his property.”
“It follows that in every instance where the contract is in form one of sale or exchange, * * * if the Court, in looking at -the whole transaction, can see that the value secured to the vendor was in good faith but the price of the thing sold or exchanged by him, there can be no usury whatever the price may be or the mode in which it may be reserved.”
These views were re-affirmed in Leavitt v. DeLauny, (4 Comst., 363,) which was affirmed in the Court of Appeals, “for the reasons stated in the opinion of Gabdineb, J.”
In More v. Howland, (4 Denio, 268,) the plaintiffs had consented to advance their own notes to the defendants, which the latter should pay or provide for at maturity, and for this the plaintiffs were to receive a commission or compensation of two and a half per *333 cent (which was more than seven per cent per annum for the period of credit.) Bronson, Ch. J., says “ it was a sale of credit and nothing more;” “ there was- no usury in the case.” “ As the law now stands, a man has as good a right to sell his credit as he has his goods or his land; and if he deal fairly, he may take as large a price as he can get for either of them.”
In Schermerhorn v. Talman, (4 Kern., 117-119,) the opinion of Mr. Justice Selden does not in all respects harmonize with the reasoning of Gardiner, J., above referred to, but the decision in the cause does not involve any conflict with that reasoning.
It seems to us, therefore, that we are now bound to say, that the mere fact that the present plaintiff received 2| per cent commission for exchanging his note for that of Lane, West & Co., did not make the latter' note so wholly void in their hands, that the defendant can say or that we can say as matter of law, that the check was without consideration; and if not, then this ground did not warrant an unqualified direction to the jury to find for the defendant.
3. Another ground upon which the deféndant’s counsel insists that the instruction given to the jury was proper is, that Lane, West & Co. had failed when their note was sold to the defendant, and for that reason the defendant had a right to rescind the contract, return the note and reftise to pay his check.
This claim is, we think, answered by the suggestion, that although the case shows that Lane, West & Co. stopped paying their notes on the 13th of October, it was not proved that they were unable to pay anything, or that the note was worthless. In so far as this point is concerned, the parties were dealing with each other at arms-length. Even the defendant had so little confidence in the responsibility of Lane, West & Co., that he was not willing to buy the note unless the note he already owned was paid. He received just what he bargained for. No fraud or deception was practised in respect to the question of the solvency or insolvency of the makers of the note. W e find no warrant for holding that he had any right to refuse to. pay his check upon this ground. The cases to which we were referred do not go so far. The payment of a debt in the notes of an insolvent bank, which it is held may be treated as no payment, furnishes no illustration of the claim to rescind under such circumstances as the present. Nor *334 do the cases, which hold where a contract is wholly executory (e. g., an agreement to sell goods for the ndte of a third person,) and the makers of the note become insolvent before the contract is performed, the party is not bound to receive such note, apply to this case. Here the contract was fully executed, the note delivered and accepted, and the check was given in payment. The defendant could afterwards, in the absence of fraud or warranty, no more rescind than the purchaser of goods or chattels when he finds, after delivery and acceptance, that the goods, &c., are not so good or so valuable as he supposed they were when he made the purchase. (Des Arts v. Leggett, 16 N. Y. R., 582, 588; Benedict v. Field, id., 595.)
And for like reasons, the suggestion that' there was a mutual mistake—that the parties both supposed that they were dealing with the note of a solvent firm—fails to warrant the recision of the sale. From the very nature of the transaction, the solvency and credit of the makers of the note were before the minds of the parties, and the very question in agitation was, whether, the defendant would or would not take the risk of the payment of that note by the makers. The plaintiffs were proposing to avoid that risk by selling the note without indorsement. The defendant was consenting voluntarily to assume that risk for a consideration to be paid to him. I can hardly conceive a plainer case for the application of the maxim, caveat emptor. The defendant and the makers both were in the city; very slight diligence would have informed the defendant of the state of the firm of Lane, West & Co., the makers. If he thought proper to make the purchase without further inquiry he ought not here to be permitted to allege his mistake. (Milner v. Duncan, 6 Barn. & Cres., 671.) In Van Winkle v. Commercial Insurance Company, in the Court of Errors and Appeals of New Jersey, November 3d, 1858, the defendants having issued a policy of insurance insuring a building against fire from a day already past, were held liable, although at the time of issuing the policy the building had already been burned, upon the ground that such was the risk they had voluntarily assumed.
The defendant here was a volunteef assuming to take the risk of the payment of the note of a third person; he received just what he bargained for, and if the note was not so likely to be paid as he supposed he had bargained for the risk.
*335 Aiken v. Short, (1 Hurlst. & Norm., Exch. R., 210; 37 Eng. L. and Eq. R., 592,) where the plaintiff sought to rescind on the groun d that there was no title to the mortgaged premises upon which he had wholly relied in paying the defendant a debt which was supposed to be secured thereby, is a much stronger case than the present, and yet the court held that he was not entitled to rescind on the ground of mistake. (See, also, Gompertz v. Bartlett, 2 Ellis & Bl., 849; 24 Eng. L. and Eq. R., 156.)
4. Finally: The question remains whether it was so clearly ' proved that the check was obtained by Mills by false representations, that the case should not have been left to the jury ?
We incline rather to the opinion that the weight of the evidence preponderates against the defendant’s claim in this respect. We of course assent to the decision heretofore made in this case, that the plaintiff cannot claim the benefit of the transaction without being affected by the misrepresentations of Mills, if such misrepresentations would have entitled the defendant to avoid the check had Mills himself been the party in interest and claimed to recover on the check.
All pretense of actual or intended fraud or falsehood on the part of Mills, in representing that the previous note was paid, is, we think, .fully disproved.
It is settled, we apprehend, that, to entitle the defendant to avoid his contract on the ground of misrepresentation, it must appear not only that the representation was made, that it related to some material fact, and that it was untrue, but it must also appear that the defendant relied upon the representation, that he acted on the faith thereof; and this imports not merely that he believed the fact to be as it was represented to be, but that his belief was founded on the representation.
If the defendant refused to rely on Mills’ representation, sought information for himself, and finally acted on belief founded on information derived from other persons, or resting in circumstances not connected with Mills’ statements, then he was not misled by what Mills said; he did not act in reliance thereon, and he was not deceived by that, if he was deceived at all, and he cannot avoid his contract. (2 Kent, 484, n. d.; 1 Story Eq. Jur., § 191; and cases cited, n., 3; id., §§ 197, 200, 202.)
*336 Now it is'true that the defendant’s testimony in his own behalf tends to show not only that he relied upon Mills’ statement, but that that formed the very ground of the purchase of the note and the giving of the check, and. was so understood by Mills at the time.
But this is contradicted by Mills, who testifies, in substance, that, at the time the representation was made, the defendant refused to rely upon it,, and refused to buy the note; that after-wards, when he saw him again, the defendant’s language indicated that he had satisfied himself on the subject; having previously refused to buy the note, stating, as a reason, (and notwithstanding Mills’ statement,) that he had received no news of the other note, he now said, “ I believe that note is paid, and I have made up my mind to buy this.” These circumstances indicate, with no little distinctness, that the defendant did not rely on Mills’ statement made, as Mills says, in the morning, but sought information for himself, and acted in reliance upon what he had learned elsewhere, and on the fact that he had received no notice of protest. This is strongly corroborated by the plaintiff’s testimony to his declarations: “ That he had presumed the note was paid; for that up to three o’clock on the 14th, on going to the Nassau Bank, they had told him that they presumed it was paid, as they had received no notice of protest“ that they told him that if the note was not paid they should have received notice of protest before three o’clock.” And again.he said, “Up to three o’clock of the day before, they had received no notice of protest at the Nassau Bank, and he had presumed from that that the note was paid.” This it is testified he stated in explanation of what he did, and “ he did not, in this conversation, say anything about Mills having assured him it was paid.”
Upon this state of the proofs, if the evidence does not so greatly preponderate against the claim that the defendant purchased the note and gave the check in reliance on representations of Mills, which proved untrue, that a verdict for the defendant on that ground could not be sustained, it is at least clear, we think, that the unsupported testimony of the defendant himself did not, in the face of the contradiction, warrant an instruction that he was entitled to a verdict. It seems to us that the case should have been submitted to the jury.
*337 For these reasons the judgment should be reversed, and a new trial be ordered; costs of the appeal and of the former trial to abide the event.
Pierrepont, J., dissented.
Judgment reversed, and new trial granted.